# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

| | | |
|---|---|---|
| **JENOIRE HOWARD, SR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CAUSE NO.  1:11-CV-104** |
| | ) | |
| **OFFICERS PHILLIP EALING, CLAY** | ) | |
| **TAYLOR, SHANE HEATH (officers** | ) | |
| **named in their individual capacities) and** | ) | |
| **THE CITY OF FORT WAYNE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

## I.  INTRODUCTION

This lawsuit, brought under 42 U.S.C. § 1983, stems from the arrest of Jenoire Howard,

Sr., by Fort Wayne police officers Phillip Ealing, Clay Taylor, and Shane Heath while Howard

was selling clothing out of his van on August 13, 2009.  Howard claims he was falsely arrested

and the victim of an illegal search and seizure, but those allegations are not before the Court at

present and will have to wait for trial.  At issue now, however, is Howard's contention that the

arresting officers used excessive force during that arrest in violation of the Fourth Amendment to

the United States Constitution and that their employer, the City of Fort Wayne, is liable, under

the doctrine of *respondeat superior*, for their battery.[1]

The importance of these issues arises from the Defendants' Motion for Partial Summary

Judgment (Docket # 41) where they maintain that Howard's claims fail because the evidence

---

[1] Subject matter jurisdiction arises under 28 U.S.C. §§ 1331 and 1343.  Jurisdiction of the undersigned
Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting.  (Docket # 14.)

shows they did not use excessive force as a matter of law and that they are entitled to qualified immunity in any event. Howard, however, alleges that a jury must determine if excessive force was applied given that the officers pointed their guns at him, threw or shoved him against his vehicle, threw him to the ground, kneed him in the back, and kept him in too-tight handcuffs.

The Defendants dispute some of Howard's facts and have filed a Motion to Strike (Docket # 48) part of paragraphs 10 and 11 of his affidavit as contrary to what he said at his deposition. Because the Court mostly disagrees with the Defendants' characterization, the Motion to Strike, as discussed in section II of this Opinion and Order, will be DENIED IN PART and GRANTED IN PART.

And, on this record, the Motion for Partial Summary Judgment motion will be GRANTED IN PART and DENIED IN PART.

## II. MOTION TO STRIKE

The Defendants contend that portions of paragraphs 10 and 11 of Howard's affidavit should be stricken as contradictory to his deposition testimony. In particular, in paragraph 10, Howard contends that one of the officers pulled him out of the van, threw or shoved him against the vehicle, searched him, and then threw him on the ground. (Howard Aff. ¶ 10.) In paragraph 11, Howard maintains that once he was on the ground, one of the officers "kneed [him] in the back, handcuffed [him], and put [him] in his squad car." (Howard Aff. ¶ 11.)

The Defendants contend that these affidavit statements should be stricken because Howard made no mention of them in his deposition; more to the point, in his deposition he described a more benign event, that one of the officers "put [him] against the car and cuffed [him]" and then the officer "laid [him] down on the ground." (Howard Dep. 36-37.) And the

Defendants also note that Howard, although given plenty of opportunities at his deposition to complain about his arrest (Howard Dep. 38-40), never mentioned being kneed in the back, although he did volunteer that being "put . . . in the grass" exacerbated his hay fever. (Howard Dep. 37-39.)

In response, Howard maintains that these allegations were actually contained in his unsworn Tort Claim Notice attached to his Second Amended Complaint, and that besides, Defendants' counsel never asked Howard how he was "laid" on the ground, leaving it open for Howard to explain that ambiguous term in his affidavit.[2]

If Howard's affidavit statements directly contradict his deposition testimony, then they are not properly before the Court. *See Beckel v. Wal–Mart Assocs., Inc.*, 301 F.3d 621, 623 (7th Cir. 2002); *Amadio v. Ford Motor Co.*, 238 F.3d 919, 926 (7th Cir. 2001) ("[A] party may not attempt to survive a motion for summary judgment by manufacturing a factual dispute through the submission of an affidavit that contradicts prior deposition testimony."); *Piscione v. Ernst & Young, LLP*, 171 F.3d 527, 532–33 (7th Cir. 1999) ("It is a well-settled rule . . . that a plaintiff cannot create an issue of material fact merely by manufacturing a conflict in his own testimony by submitting an affidavit that contradicts an earlier deposition.").

The Court agrees that there is no direct contradiction between Howard's ambiguous or incomplete deposition testimony and his affidavit, at least concerning his being put or thrown against the van, and subsequently being thrown on the ground (both actions requiring some degree of force). *Del Signore v. Asphalt Drum Mixers*, 182 F. Supp. 2d 730, 733 (N.D. Ind.

---

[2] The word "laid" is the past tense of the transitive verb, "lay." According to Webster's online dictionary, one of the definitions of "lay" is "to beat or strike down with force."

2002) (citing *Aviles v. Cornell Forge Co.*, 183 F.3d 598, 602-03 (7th Cir. 1999) (ambiguities in deposition must be resolved in favor of non-moving party on summary judgment)).  To the extent that Howard's affidavit is seen as deviating from what he said in his deposition, this creates a credibility issue for the jury.  *Patton v. MFS/Sun Life Fin. Distribs., Inc.*, 480 F.3d 478, 488 (7th Cir. 2007).  Consequently, since these statements in paragraph 10 of Howard's affidavit concerning his being put or thrown against the van and then thrown on the ground do not directly contradict his deposition testimony, they will not be stricken.  Defendants' motion is therefore DENIED as to these statements.

Regarding Howard's statement in paragraph 11 of his affidavit that he was kneed in the back while being handcuffed, Howard does not mention this allegation anywhere in his deposition.  Therefore, unlike the statements in paragraph 10, there were no ambiguous statements for Howard to explain or clarify.  As such, the statements in paragraph 11 that Howard was kneed in the back are stricken as contradictory to his deposition testimony, where he was given several opportunities to mention this incident, but never did so.  (Howard Dep. 38:9-12, 39:7-10, 40:10-12).  Defendants' motion to strike these statements is thus GRANTED.

### III.  FACTUAL BACKGROUND[3]

Howard is a licensed street peddler who sells clothing out of a van.  (Howard Aff. ¶ 2.)  On August 13, 2009, Howard and his partner, Akeem Carswell, were having a sale on East Suttenfield in Fort Wayne, Indiana (Howard Aff. ¶¶ 2-3), an area considered to be one of high crime with heavy drug trafficking (Taylor Aff. ¶ 4).

---

[3] For summary judgment purposes, the facts are recited in the light most favorable to Howard, the nonmoving party.  *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

On the evening of August 13, 2009, City of Fort Wayne Dispatch was contacted by an anonymous caller who described a suspicious van with the logo "Double A Trailers" that had been parked for several hours at 445 E. Suttenfield. (Taylor Aff. ¶ 3.) The caller speculated that the van might be involved in narcotics trafficking. (Taylor Aff. ¶ 3.)

Officers Taylor and Heath were dispatched and, when they arrived, saw two men outside the van and two men—later determined to be Howard and Carswell, the passenger—in it. (Taylor Aff. ¶¶ 3, 5.) Heath and Taylor advanced on the van with Taylor approaching the driver's side and Heath approaching the passenger's side. (Howard Ex. 2 at 1.)

At about the time Officer Ealing arrived and began to check Howard's customers for outstanding warrants (Howard Ex. 2 at 1), one of the officers asked to search the van, but Howard refused (Howard Aff. ¶ 5). Howard did, however, provide Taylor his driver's license registration, tax identification number, and peddler's license. (Howard Aff. ¶ 5.) Howard stayed in the van and waited for the return of his license. (Howard Aff. ¶ 5.) By now a crowd of onlookers had formed. (Taylor Aff. ¶ 7.)

At this point, it appears that both Howard and Carswell were pulled out of the van and frisked. (Howard Aff. ¶ 6; Taylor Aff. ¶ 6.) When nothing was found on Howard, he got back into the driver's seat and closed the door, but then protested when he noticed that Taylor was on the passenger's side searching the van's cargo area. (Howard Aff. ¶¶ 6-7.)

Inside the van, Taylor found a loaded gun in a black bag and immediately alerted the other officers by yelling, "Gun, gun, gun," and unholstered his own handgun (Taylor Aff. ¶¶ 10-

11), pointing it at Howard (Howard Aff. ¶ 10).[4]  The crowd outside the van was ordered to the ground.  (Howard Aff. ¶ 10.)  Ealing, now at the driver's side door, also drew his weapon and pointed it at Howard.[5]  (*See* Howard Aff. ¶ 10.)  Howard complied with orders to put his hands on the steering wheel.  (Howard Aff. ¶ 10.)

Ealing removed Howard from the van, and with some force—Howard describes it as a throw or shove—such that he was put against the van and searched again.  (Howard Aff. ¶ 10.)  Ealing then threw Howard on the ground.  (Howard Aff. ¶ 10; Howard Dep. 37.)  At some point, Taylor handcuffed Howard behind his back[6] with a single set of cuffs,[7] which Howard contends was painful and tight due to his size (at the time, he was 5 foot 7 inches tall and weighed 290 pounds).  (Howard Aff. ¶ 12; Howard Dep. 45.)

Howard was later escorted to a squad car and ultimately charged with Possession of a Handgun Without a License.  (Taylor Aff. ¶¶ 13-14.)  While waiting in the squad car, before

---

[4] In his narrative report, Taylor states that he unholstered his gun, placing it at the low ready.  (Howard Ex. 3 at 1.)  At the summary judgment stage, however, the Court must view all facts in the light most favorable to Howard.  *See Payne*, 337 F.3d at 770.

[5] In his affidavit, Howard indicates that the third officer he had seen arrive at the van was at his driver's side window and was pointing a gun in his face.  (Howard Aff. ¶ 10.)  This would appear to be Ealing as Taylor and Heath arrived on the scene together and approached the van at the same time, with Taylor going to Howard's side of the van and Heath going to the passenger's side.  (Howard Ex. 2 at 1 ("Officer Taylor approached the driver's side and detained the subject who was standing near the driver's side of the door.  Officer Heath did the same for the subject who was standing on the passenger side of the door.  Officer Ealing was checking all parties for Warrants."); Howard Aff. ¶ 4.)

[6] Although portions of Howard's deposition attached to Defendants' Motion to Strike (Docket # 48) suggest that Ealing handcuffed him (Howard Dep. 37), affidavits from both Howard and Taylor indicate that Taylor handcuffed Howard.  (Howard Aff. ¶ 11; Taylor Aff. ¶ 12.)  Moreover, both parties represent in their briefs that Taylor performed the handcuffing.  (Defs.' Mem. of Law in Supp. of Mot. for Partial Summ. J. ("Defs.' Mem.") 3; Pl.'s Resp. Mem. in Opp. to Defs.' Partial Mot. for Summ. J. ("Pl.'s Resp.") 4.)  Therefore, as the parties agree, the Court will assume that Taylor handcuffed Howard.

[7] While the parties dispute whether a single or double set of handcuffs was used on Howard (*see* Defs.' Mem. 5 n.2), for the purposes of this motion, the Court assumes only one set was used.

even leaving the scene, Howard told Taylor three or four times that the cuffs were too tight and hurt and asked Taylor to loosen them, allegedly stating, "[T]hey are piercing my wrists," and "My finger tips are feeling numb." (Howard Aff. ¶ 12; Howard Dep. 39.) Despite Howard's complaints, Taylor did not loosen or adjust the handcuffs. (Howard Aff. ¶ 12; Howard Dep. 39.) A second officer—presumably Heath—was also present in the squad car as Howard made these complaints.[8] (*See* Howard Aff. ¶ 12.) Neither officer loosened the handcuffs, and Howard remained in the tight cuffs for about thirty minutes before eventually arriving at the jail, resulting in bruised wrists. (Howard Aff. ¶¶ 12-13, 15.) After his release from the jail the next day, and at the recommendation of his mother, a nurse, he applied ice on the wrists over the next three days; they remained bruised for seven days. (Howard Aff. ¶ 15.)

## IV. STANDARD OF REVIEW

Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne*, 337 F.3d at 770. When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.* The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490, 507 (7th Cir. 2010) (quoting *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994)). If the evidence is such that a reasonable factfinder could return a verdict in favor of the

---

[8] Howard states that there was a second officer in the squad car and that "this was the officer that had spent most of his time on the outside of the passenger side of [his] van" when his partner was still in the van. (Howard Aff. ¶ 12.) As explained in footnote 5, Heath was the officer who approached the passenger's side while Howard's partner was still in the van to detain the subject standing near the passenger's side door. (Howard Ex. 2 at 1.) On the other hand, Howard contends that he told Taylor and *either* Heath or Ealing that the handcuffs were too tight and causing him pain. (Pl.'s Resp. 4-5.)

nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770. A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true," as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.* However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771.

# V. DISCUSSION

## A. *Howard's Excessive Force Claim*

Howard's excessive force argument essentially boils down to his assertion that the circumstances of his arrest and the crime for which he was charged did not justify any—or at least no significant—use of force. He also claims that since he was not fleeing or resisting, it was unreasonable to keep him in overly tight handcuffs for thirty minutes, especially after he repeatedly complained of specific pain to the officers and ended up with bruised wrists. Howard also contends the Defendants used excessive and unreasonable force when they pointed their guns at him and threw him against his van and on the ground since he never posed a risk to them.

"[T]he Fourth Amendment prohibits the use of excessive force during the execution of a seizure." *Jacobs v. City of Chicago*, 215 F.3d 758, 773 (7th Cir. 2000). When officers' actions are "'objectively reasonable' in light of the facts and circumstances confronting them" from the perspective of a reasonable officer, the officers' actions do not constitute excessive force. *Graham v. Connor*, 490 U.S. 386, 397 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* The "calculus of reasonableness must embody allowance for the

8

fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97. "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id*. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). A court must look to the following factors when determining whether the amount of force used is reasonable: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Payne*, 337 F.3d at 778.

At the outset, Howard does not contest the fact that the police officers, responding to a report of suspicious activity, found a gun in his van while he was sitting in the driver's seat. Howard suggests, however, that because the gun was beyond his reach and he was only charged with a misdemeanor, the nature and severity of the crime was insufficient to justify the use of force. (Pl.'s Resp. 9.) He also argues that since he had already been frisked and was otherwise compliant, no force was necessary when the gun was eventually found. (Pl.'s Resp. 9.) Howard cites no cases for these propositions. He simply argues that, because he posed a minimal threat of violence or flight, Defendants used unreasonable force when they pointed guns at him, refused to loosen his overly tight handcuffs, and threw (or shoved) him up against the van and on the ground. (Pl.'s Resp. 10, 15-16.) The Court will first address each of these allegations in turn.

1. *Defendants Did Not Use Excessive Force When They Pointed Their Guns At Howard*

First, "the excessive force inquiry 'looks to whether the force used to seize the suspect

was excessive in relation to the danger he posed—to the community or to the arresting officers—if left unattended.'" *Jacobs*, 215 F.3d at 773 (quoting *McDonald v. Haskins*, 966 F.2d 292, 294-95 (7th Cir. 1992)). Accordingly, the Seventh Circuit Court of Appeals has held that pointing a gun at an individual that presents no danger is unreasonable and violates the Fourth Amendment. *Baird v. Renbarger*, 576 F.3d 340, 345 (7th Cir. 2009) (holding that it was objectively unreasonable for an officer to use a submachine gun to detain individuals suspected of altering a vehicle identification number ("VIN")); *see Jacobs*, 215 F.3d at 773-74 (stating that pointing a gun at an unresisting elderly man's head for ten minutes even after realizing he was not the desired suspect was out of proportion to any danger that he could possibly have posed); *McDonald*, 966 F.2d at 294-95 (holding that pointing a gun at an innocent nine-year-old child during a search and threatening to pull the trigger was "objectively unreasonable").

At the same time, however, the Court noted that "while police are not entitled to point their guns at citizens when there is no hint of danger, they are allowed to do so when there *is* reason to fear danger." *Baird*, 576 F.3d at 346 (emphasis in original); *see Williams v. City of Champaign*, 524 F.3d 826, 827-29 (7th Cir. 2008) (finding no excessive force when officers pointed their guns at someone who they reasonably believed might have committed a double robbery moments before). Accordingly, "courts do not find constitutional violations for gun pointing when there is a reasonable threat of danger or violence to police." *Baird*, 576 F.3d at 346-47 (collecting cases).

And when performing a valid investigatory stop, an officer's pointing a gun at a person is not *per se* unreasonable. *Williams v. City of Champaign*, No. 04-2150, 2007 WL 522184, at *17 (C.D. Ill. Feb. 15, 2007), *aff'd*, 524 F.3d 826 (7th Cir. 2008) (citing *Wilkins v. May*, 872 F.2d

190, 194 (7th Cir. 1989)). Rather, "[s]ome force may be reasonable during an investigatory stop when the circumstances give rise to a justifiable fear for personal safety on the part of the officer." *Whitehead v. Bond*, 680 F.3d 919, 932 n.1 (7th Cir. 2012) (citing *Jewett v. Anders*, 521 F.3d 818, 824-25 (7th Cir. 2008)); *see Paige v. City of Fort Wayne*, No. 1:09-cv-143, 2010 WL 3522526, at *6 (N.D. Ind. Sept. 2, 2010) (noting that once the officers had reasonable suspicion to suspect that the plaintiff had threatened someone with a pistol, they were justified in drawing their weapons for their own protection as they effectuated the stop); *see also United States v. Fisher*, 364 F.3d 970, 973 (8th Cir. 2004) ("It is well established . . . that when officers are presented with serious danger in the course of carrying out an investigative detention, they may brandish weapons or even constrain the suspect with handcuffs in order to control the scene and protect their safety." (citations omitted)). An officer has "a right to protect himself, *Terry v. Ohio*, 392 U.S. 1, 20 (1968), and to pursue his investigation without fear of violence, *Adams v. Williams*, 407 U.S. 143, 146 (1972)." *Johnson v. City of Milwaukee*, 41 F. Supp. 2d 917, 925 (E.D. Wis. 1999) (holding that an officer's act of drawing his gun was reasonable where officer had just observed what he reasonably believed was a battery and individuals involved could have been armed, regardless of whether officer intended only to detain rather than arrest the suspect).

The instant case is easily distinguishable from *Baird*, *Jacobs*, and *McDonald*. For instance, in *Baird*, the Seventh Circuit noted that the crime involved was altering a VIN, which is "a far cry from crimes that contain the use of force as an element, crimes involving possession of illegal weapons, or drug crimes, all of which are associated with violence," and that "there was never a reason to suspect that there was any threat to the safety of the officers involved." 576 F.3d at 344. Here, the officers were acting on a tip that Howard's van may be involved in

narcotics trafficking and were responding to the call in a high crime area associated with such activity. As such, they had some reason to believe that they were investigating a possible drug crime, which is commonly "associated with violence." *Id.* Even *without* this anonymous tip suggesting drug activity, unlike in *Baird*, the officers had reason to fear for their safety and that of others in the area once Taylor discovered the gun in Howard's van, justifying the pointing of their guns at Howard.[9] *See id.* at 344, 346-47.

Moreover, this was arguably an investigatory stop—that later turned into an arrest—in a high crime area, and, as such, the officers were permitted to use some force, including drawing and brandishing their weapons, once the gun was found as it gave rise to a justifiable fear for their personal safety. *Whitehead*, 680 F.3d at 932 n.1; *Fisher*, 364 F.3d at 973; *Paige*, 2010 WL 3522526, at *6; *see Mearday v. City of Chicago*, 196 F. Supp. 2d 700, 712-13 (N.D. Ill. 2002) (holding that officers' display of weapons during an investigatory stop was not excessive force where suspect had fled from officers, officer had *reasonable suspicion that the suspect was armed,* and officers were in a *high crime area*, investigating a police shooting by machine gun).

And although Howard alleges that two officers—presumably Taylor and Ealing—pointed their guns at him,[10] "there is no evidence that [Taylor or Ealing] made any kind of accompanying threats of violence, such as a threat to pull the trigger." *Miller v. Lewis*, 381 F. Supp. 2d 773,

---

[9] Howard argues that the Defendants lacked reasonable suspicion, exceeded the parameters of an investigatory stop, and conducted an illegal stop and search when they found the gun (Pl.'s Resp. 14-15); as such, Howard contends that any circumstances arising from the stop that the Defendants claim justify their use of force were of their own creation (Pl.'s Resp. 15). This theory, however, does not negate the danger the officers reasonably perceived once they found the gun, and, besides, the circumstances of the stop and search are not relevant to this Partial Motion for Summary Judgment as Defendants only seek summary judgment on the excessive force claims.

[10] Although Howard states in his response that Taylor and Heath pointed their guns at him (Pl.'s Resp. 4), as explained in footnote 5, Howard's affidavit suggests that it was Taylor *and Ealing* that did so (*see* Howard Aff. ¶ 10). Ultimately, which officers pointed their guns at Howard is irrelevant as all of them are entitled to summary judgment on the excessive force claim arising from this act.

787 (N.D. Ill. 2005); *see also Collins v. Nagle*, 892 F.2d 489, 497 (6th Cir. 1989) (noting, in finding officer did not use excessive force when he pointed his gun at the suspect, that there was no indication that the officer intended or attempted to fire the gun or to cause physical injury). Therefore, given the increased tension after Taylor found the gun in Howard's van, where Howard was sitting, the officers did not use excessive force in diffusing the situation. *See Miller*, 382 F. Supp. 2d at 787 (holding that an officer did not use excessive force when he drew and pointed his gun at plaintiff for a handful of seconds after plaintiff assumed a conflict-ready stance). Accordingly, Howard's excessive force claim based on the officers pointing their guns at him cannot survive summary judgment against any of the Defendants.

   *2. A Reasonable Jury Could Conclude That Taylor and Heath Used Excessive Force in Refusing to Loosen or Adjust Howard's Overly Tight Handcuffs*

   Howard also contends that genuine issues of material fact exist as to his too-tight handcuffing claim. (Pl.'s Resp. 10.) Considering the facts in the light most favorable to Howard, as the Court must do, Howard's too-tight handcuffing claim survives summary judgment against Taylor and Health.

   The Seventh Circuit has occasionally recognized valid excessive force claims based on overly tight handcuffs. *Tibbs v. City of Chicago*, 469 F.3d 661, 666 (7th Cir. 2006); *see Payne*, 337 F.3d at 774-75, 781 (holding that summary judgment was inappropriate when there was evidence that arresting officers handcuffed the plaintiff so tightly she lost feeling in her hands—necessitating two carpal tunnel surgeries—and refused to loosen the cuffs when she told them of the numbness); *Herzog v. Vill. of Winnetka*, 309 F.3d 1041, 1042-43 (7th Cir. 2002) (refusing to loosen plaintiff's chafing handcuffs constitutes excessive force in a case where plaintiff had violated no law, was arrested without probable cause, and did not resist). In *Tibbs*,

the Seventh Circuit held that the plaintiff could not survive summary judgment because he had complained to the officer only once about his handcuffs without elaborating on an injury, numbness, or degree of pain; was handcuffed for about twenty-five to thirty minutes; experienced redness on his wrist for less than two days; and did not seek or receive medical care for any alleged wrist injury. 469 F.3d at 666; *see also Sow v. Fortville Police Dep't*, 636 F.3d 293, 304 (7th Cir. 2011) (finding no genuine issue of material fact regarding plaintiff's too-tight handcuffing claim when he complained only once that the cuffs were too tight, presented no evidence that he provided any elaboration, did not complain of any injury when he was taken to the jail, and did not receive any treatment); *Stainback v. Dixon*, 569 F.3d 767, 773 (7th Cir. 2009) (holding that generalized complaints, without any elaboration regarding a preexisting injury or other infirmity, would not have placed a reasonable officer on notice that the plaintiff would be injured by their actions).

Here, Howard complained to Taylor three or four times about the cuffs, asking him to loosen them, and elaborated on his pain, stating that the cuffs were "piercing [his] wrists" and that his fingertips were "feeling numb." *See Hogue v. City of Fort Wayne*, 599 F. Supp. 2d 1009, 1029-30 (N.D. Ind. 2009) (denying motion for summary judgment when plaintiff told the defendant officer multiple times during the arrest that the officer was breaking his arm); *cf. Tibbs*, 469 F.3d at 666 (concluding that tight handcuffs did not constitute excessive force where plaintiff complained of pain only once to officer and did not communicate his degree of pain); *Cusack v. City of Des Plaines*, No. 06 C 2507, 2007 WL 2484325, at *3-4 (N.D. Ill. Aug. 29, 2007) (same). Furthermore, Howard ended up with bruised wrists that lasted for seven days and got medical advice from his mother, a nurse, who advised him to ice his wrists, which he did for three days. *Cf. Tibbs*, 469 F.3d at 666 (concluding that tight handcuffs did not constitute

excessive force where plaintiff did not seek or receive medical care).

And that Howard's wrists were merely bruised is irrelevant as the Seventh Circuit has explained that a "significant injury is not required for Fourth Amendment excessive force claims . . . ." *Rambo v. Daley*, 68 F.3d 203, 207 n.2 (7th Cir. 1995); *see also Herzog*, 309 F.3d at 1043 ("The Fourth Amendment protects against unreasonable seizures, not seizures that 'shock the conscience' or cause 'severe injuries.'" (quoting *Lester v. City of Chicago*, 830 F.2d 706, 712 (7th Cir. 1987))). Howard's minimal injuries "[do] not rule out the possibility that [Taylor] employed force that was not reasonably necessary to secure [him]." *Holmes v. Vill. of Hoffman Estate*, 511 F.3d 673, 687 (7th Cir. 2007). Indeed, "[a] factfinder might conclude that [Howard's] injuries were slight but nonetheless find that [Taylor] employed more force than was justified." *Id.* (collecting cases). Unlike *Stainback* , Howard gave more than generalized complaints about his wrists, including that the cuffs were "piercing [his] wrists" and that his fingertips were "feeling numb," putting a reasonable officer on notice that further injury may result without adjustment of the cuffs. *See Stainback*, 569 F.3d at 773. Therefore, Howard has presented sufficient facts to withstand summary judgment on his too-tight handcuffing claim against Taylor.

As to Heath and Ealing, although Howard contends at one point that while waiting in the squad car before leaving the scene he told Taylor and *either* Heath or Ealing that the handcuffs were too tight and causing him pain (Pl.'s Resp. 4-5), he subsequently states that Taylor and one of the remaining officers—"presumably Heath"—were together in the squad car with Howard as he repeatedly complained about the overly tight handcuffs (Pl.'s Resp. 17). Howard then argues that the identity of this second officer is a question of material fact that should be determined at trial. (Pl.'s Resp 17.) But, viewing the record in the light most favorable to Howard, and as

explained earlier in footnote 8, a reasonable inference is that Heath, and not Ealing, was the second officer present in the squad car. If, as Howard contends, Heath was in the squad car while Howard repeatedly complained about the tight handcuffs and specifically described the pain to Taylor, then, like Taylor, Heath would also be liable for failing to loosen or adjust Howard's handcuffs.

On the other hand, Howard presents no evidence that Ealing heard his complaints of pain from the handcuffing or requests to loosen the cuffs, entitling him to summary judgment on the excessive force claim arising from the handcuffing. *Cf. Taylor v. Kveton*, 684 F. Supp. 179, 183 n.6 (N.D. Ill. 1988) (noting, in granting an officer summary judgment on his failure to intervene to loosen the plaintiff's too-tight handcuffs, that there was no evidence that the officer was aware the handcuffs were too tight). Accordingly, while Howard's too-tight handcuff claim survives summary judgment against Taylor and Heath, it fails against Ealing.

### 3. A Reasonable Jury Could Conclude That Ealing Used Excessive Force in Throwing Howard Against the Van and On the Ground

Besides his tight handcuffing claim, Howard also alleges that Ealing forcibly removed him from his van, shoved or threw him against the van, and then threw him on the ground. If, as he maintains, Howard never struggled with the officers and was complying with orders after the gun was found, such as placing his hands on the steering wheel, then "it is difficult to conceive of a reasonable explanation for [Ealing's] conduct, and a jury could readily conclude that [Ealing] used excessive force in [shoving or throwing Howard against the van and then throwing him on the ground]." *Holmes*, 511 F.3d at 686.

Indeed, "a police officer may not continue to use force against a suspect who is subdued and complying with the officer's orders." *Hayes v. City of Indianapolis*, No. 1:08-cv-006-DFH-

JMS, 2009 WL 700232, at *4 (S.D. Ind. Mar. 16, 2009) (collecting cases); *see also Thomas v. City of Fort Wayne*, No. 1:06-CV-320 PS, 2008 WL 282348, at *5 (N.D. Ind. Jan. 31, 2008) (stating that facts suggesting that plaintiff could have posed a threat to the officers' safety would not justify strikes to plaintiff's head *after* officers determined he was not resisting arrest). "Even 'one violent push and poke' will constitute excessive force when there is no provocation." *DuFour-Dowell v. Cogger*, 969 F. Supp. 1107, 1120 (N.D. Ill. 1997) (quoting *Lanigan v. Vill. of East Hazel Crest*, 110 F.3d 467, 475-76 (7th Cir. 1997)); *accord Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996) ("[P]olice officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever."); *Norris v. Bain*, No. 1:04-CV-1545, 2006 WL 753131, at *14 (S.D. Ind. Mar. 21, 2006) ("[It is] well established that the use of force unnecessary for an arrest, particularly where force is applied to a suspect who is not fleeing or resisting, and who has been overcome, cannot be considered constitutionally reasonable."); *Hill v. Miller*, 878 F. Supp. 114, 116 (N.D. Ill. 1995) ("[T]he use of any significant force . . . not reasonably necessary to effect an arrest—as where . . . the force is used after a suspect's resistance has been overcome or his flight thwarted—would be constitutionally unreasonable.").

Here, Howard alleges that, after the gun was discovered, Ealing pulled him from the van and then threw (or shoved) him against the van and then onto the ground. Although "[n]ot every push or shove, even if it may seem unnecessary in the peace of a judge's chambers . . , violates the Fourth Amendment," *Graham*, 490 U.S. at 396 (internal quotation and citation omitted), the force Ealing allegedly used in shoving or throwing Ealing against the van and then onto the ground could be viewed by a jury as more than minimal, *see Miller*, 381 F. Supp. 2d at 788 (finding that the relatively minor amount of force used in grabbing the plaintiff's shirt did not constitute excessive force because "[the officer] did not use the shirt to try to choke [the

plaintiff], or *throw him about*, but instead kept [the plaintiff] under relatively secure control . . ." (emphasis added)). Unlike in *Miller*, however, Howard *does* allege that Ealing "threw him about," first against the van and then onto the ground, when he contends he was not resisting.

To that end, Howard maintains that, once the gun was discovered, he complied with an order to put his hands on the steering wheel and that he was not resisting.[11] *Cf. Smith v. City of Chicago*, 242 F.3d 737, 744 (7th Cir. 2001) (finding no excessive force when officers stopped an apparently fleeing suspect, pulled him out of his car, pinned his arms behind his back, slammed him against the hood of his car, and handcuffed him); *Radjen v. Parrish*, No. 2:08-CV-160-PRC, 2009 WL 3060206, at *9 (N.D. Ind. Sept. 21, 2009) (holding that officer did not use excessive force in throwing plaintiff against the trunk of the patrol car because a reasonable officer would have thought that the plaintiff was continuing to struggle and that the officer needed to gain physical control over her). And although police officers are "justified in using a higher degree of force to restrain a suspect whom they reasonably believe to be dangerous," a jury could conclude that throwing (or shoving) Howard against the van and then onto the ground was "force beyond what was reasonably necessary to effect the arrest or protect the officers," especially given the evidence that after the gun was discovered, Howard complied with an officer's order to put his hands on the steering wheel and did not otherwise resist. *Thomas*, 2008 WL 282348, at *5.

Moreover, even though Ealing justifiably regarded Howard as a threat, with his gun on Howard and Howard's hands on the steering wheel, Ealing need not have thrown or shoved him

---

[11] In contrast, the officers' narrative reports describe a struggle between Taylor and Howard over the bag in which the gun was discovered. (*See* Howard Ex. 2 at 1-2; Howard Ex. 3 at 1.) If Howard was struggling with the officers, then Ealing's use of force in throwing (or shoving) him against the van and then onto the ground may have been reasonable. But such a dispute cannot be resolved on summary judgment. *Kasey v. McCulloh*, No. 09 C 1957, 2011 WL 1706092, at *5 (N.D. Ill. May 5, 2011) (stating that a credibility dispute regarding whether plaintiff refused to comply with the officer's orders cannot be resolved on summary judgment).

against the van and then thrown him onto the ground. *See Johnson*, 41 F. Supp. 2d at 926.

Rather, Ealing could have taken precautions which would have increased both Howard's safety

and his own, such as first using verbal control to detain Howard—and, by placing his hands on

the steering wheel as ordered, Howard had already shown he was likely to comply with such

control—or requiring Howard to lie down on the ground on his own accord rather than carrying

out a frisk for weapons. *Id.*; *see also United States v. Tilmon*, 19 F.3d 1221, 1228 (7th Cir. 1994)

("When a suspect is considered dangerous, requiring him to lie face down on the ground is the

safest way for police officers to approach him, handcuff him, and finally determine whether he

carries any weapons."). As such, genuine issues of material fact exist as to whether Ealing's

actions in throwing (or shoving) an allegedly unresisting Howard against the van and onto the

ground were reasonable, precluding summary judgment in his favor on this claim. *See Johnson*,

41 F. Supp. 2d at 926-28 (holding that genuine issue of material fact existed as to whether an

officer's action in closing in on a battery suspect with his gun drawn and initiating physical

contact with him by grabbing and pushing him up against a fence, allegedly striking suspect with

the gun in the process, were reasonable).

Finally, as to Taylor and Heath, Howard has failed to establish their personal

involvement in these particular acts, which is fatal to his claim. *See, e.g.*, *Minix v. Canarecci*,

597 F.3d 824, 833 (7th Cir. 2010); *see also Grieveson v. Anderson*, 538 F.3d 763, 777-78 (7th

Cir. 2008) ("Also problematic for [plaintiff] is his failure to tie actions of the named defendants

to the injuries he allegedly suffered. . . . Vague references to a group of 'defendants,' without

specific allegations tying the individual defendants to the alleged unconstitutional conduct, do

not raise a genuine issue of material fact with respect to those defendants." (citations omitted)).

Ultimately, genuine issues of material fact exist for trial as to the force Taylor and Heath

used when they failed to adjust Howard's handcuffs and the force Ealing used when he allegedly threw Howard against the van and onto the ground, precluding summary judgment regarding these allegations of excessive force against these officers. In contrast, as noted above, Howard's claim that the officers used excessive force when they pointed their guns at him fails against all of the Defendants, his too-tight handcuffing claim fails against Ealing, and his excessive force claim for being thrown against the van and onto the ground fails against Taylor and Heath.

### B. Howard's Failure to Intervene Claim

Along with the allegations of direct liability for excessive force, Howard also contends that all the Defendants are liable, if not as actors, then as bystanders who saw unreasonable force being used, but who failed to intervene when they had the opportunity to do so.

First, the parties dispute whether Howard has actually asserted a bystander liability claim against the Defendants. Howard contends that his Second Amended Complaint and attached Tort Claim Notice presented sufficient facts to state a claim of excessive force against all three Defendants based on bystander liability (Pl.'s Resp. 17), while Defendants argue that this complaint contains no allegation of a failure to intervene claim (Defs.' Reply 6). Upon review of Howard's Second Amended Complaint, he does not specifically assert a failure to intervene claim against the Defendants, and "[a] claim raised for the first time in response to a motion for summary judgment is not properly before the court," *Chinn v. Cantrell*, No. 2:04 cv 393, 2006 WL 2927595, at *4 (N.D. Ind. Oct. 11, 2006); *see Aida Food & Liquor, Inc. v. City of Chicago*, 439 F.3d 397, 402 (7th Cir. 2006) ("[A] response to summary judgment is hardly a timely filing in which to raise an issue."); *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment."). Nevertheless, the Court will briefly address this claim.

An officer who is present and fails to intervene to prevent other law enforcement officers from infringing an individual's constitutional rights is liable under § 1983 if that officer had reason to know the following: "(1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Chavez v. Ill. State Police*, 251 F.3d 612, 652 (7th Cir. 2001) (emphasis in original) (quoting *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)). Furthermore, "[w]hether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering the evidence, a reasonable jury could not possibly conclude otherwise." *Lanigan*, 110 F.3d at 478 (citing *Anderson v. Branen*, 17 F.3d 552, 556 (2d Cir. 1994)).

In deciding whether an officer had a realistic opportunity to intervene, courts may consider, among other factors, the length of the excessive force, the number of blows involved, and the positions of the bystander officers relative to the altercation. *Kirkwood v. DeLong*, 683 F. Supp. 2d 823, 830 (N.D. Ind. 2010); *Laffoon v. City of Portage*, No. 2:09-cv-103, 2011 WL 2293331, at *10 (N.D. Ind. June 8, 2011). When the alleged excessive force consists of only one or two blows in quick succession, an officer may not have had a realistic opportunity to intervene. *See Lanigan*, 110 F.3d at 478 (affirming the 12(b)(6) dismissal of a plaintiff's failure to intervene claim when the only allegations were of a single poke and push and a contemporaneous statement and noting that the bystander officer did not have to throw himself between the officer's finger and the plaintiff's body to interrupt the imminent poke); *Thomas*, 2008 WL 282348, at *8 (finding that a reasonable jury could not possibly conclude that the bystander officers had a chance to stop the force used in pulling the plaintiff out of the car and

allegedly striking him in the head and stomping on his legs when it took only seconds to pull the plaintiff out, the events happened very quickly and may not have been visible to the officers, and the officers were occupied restraining the plaintiff when his legs were allegedly stomped).

On the other hand, if there are multiple, separate blows, the bystander officer was standing close by, and the altercation lasted more than a few seconds, a jury could reasonably find that the bystander officer had reason to know that excessive force was being used and could have stopped it. *Kirkwood*, 683 F. Supp. 2d at 830 (denying summary judgment on failure to intervene claim when the plaintiff presented evidence of three separate blows—a tackle, an arm bar, and a knee to the back—the officers were standing ten feet away or less, and the altercation may have lasted for twenty seconds); *see also Pinkey v. Thomas*, 583 F. Supp. 2d 970, 984 (N.D. Ind. 2008) (denying summary judgment when the bystander officer was clearly present and within an arm's length of both the plaintiff and the acting officer).

Here, to review, there are three alleged instances of excessive force: (1) Taylor and Ealing pointing their guns at Howard after the gun was discovered; (2) Taylor's excessively tight handcuffing of Howard and his and Heath's subsequent failure to loosen or adjust the handcuffs; and (3) Ealing throwing (or shoving) Howard against the van and then onto the ground.

As to the gun pointing allegation, the Court has already concluded that this did not amount to excessive force; accordingly, there can be no failure to intervene claim based on this action against any of the Defendants. *See Abdullahi v. City of Madison*, 423 F.3d 763, 767-68 (7th Cir. 2005) ("Though legally distinct, the fact of plaintiff's failure to intervene claim is closely linked to that of her excessive force claim since, by definition, if there was no excessive force then there can be no failure to intervene.").

Regarding the too-tight handcuffing claim, it does not seem to be a failure to intervene

claim (something Howard never explicitly raised in any of the three versions of his Complaint); that is, once Howard repeatedly told Heath of the pain from the handcuffs, his failure to adjust them constituted an arguable basis for an excessive force claim. On the other hand, as to Ealing, there is, once again, no evidence that he was aware that Howard's handcuffs were too tight, defeating any failure to intervene claim against him. *Taylor*, 684 F. Supp. at 183 n.6.

Finally, as to the allegations that Taylor and Heath failed to intervene to stop Ealing's use of force in throwing Howard up against the van and onto the ground, it appears that these two actions occurred in quick succession, such that they had no realistic opportunity to intervene. *See Lanigan*, 110 F.3d at 478; *Thomas*, 2008 WL 282348, at *8. Even more compelling is Howard's failure to show that Taylor and Heath were anywhere near Ealing when he allegedly applied this force. *Cf. Kirkwood*, 683 F. Supp. 2d at 830 (denying summary judgment on failure to intervene claim when bystander officer was ten feet or less away); *Pinkey*, 583 F. Supp. 2d at 984 (denying summary judgment on failure to intervene claim when the bystander officer was within arm's length of the plaintiff and the acting officer). Accordingly, Howard's claim against Taylor and Heath for their failure to intervene to stop Ealing's use of force fails on its merits. As such, Howard's purported failure to intervene claim against each of the Defendants cannot survive summary judgment.

### C. Qualified Immunity

Defendants further maintain that they are entitled to qualified immunity on Howard's excessive force claim. "[Q]ualified immunity protects government officials from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Gonzalez v Vill. of West Milwaukee*, 671 F.3d 649, 657 (7th Cir. 2012) (quoting *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir.

2010)).  Claims of qualified immunity involve two inquiries: (1) whether the official violated a constitutional or statutory right; and (2) whether the right was clearly established at the time of the alleged misconduct.  *Id.* (citing *Whitlock v. Brown*, 596 F.3d 406, 410 (7th Cir. 2010)).  A negative answer to either question entitles the official to the defense.  *Id.*; *Hanes v. Zurich*, 578 F.3d 491, 493 (7th Cir. 2009).  A plaintiff may defeat a qualified immunity defense by showing that "the conduct at issue is so egregious that no reasonable person could have believed that it would not violate clearly established rights."[12]  *Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008); *see also Smith*, 242 F.3d at 742.

*1. Defendants Are Entitled to Qualified Immunity for Pointing Guns At Howard*

Even if Defendants used excessive force in pointing their guns at Howard, they would be entitled to qualified immunity.  *Baird*, *Jacobs*, and *McDonald*, where the Seventh Circuit held that pointing a gun at an individual that presents no danger is unreasonable, "all present extreme situations in which the officers in question obviously overstepped the bounds of reasonableness." *Anderson v. City of West Bend Police Dep't*, 774 F. Supp. 2d 925, 950 (E.D. Wis. 2011).  Here, Taylor and Ealing pointed their guns at Howard after Taylor discovered a gun in the van in which Howard was sitting.  These circumstances simply do not rise to the egregious level of force used in *Baird*, *Jacobs*, and *McDonald*.  *Id.* at 950-51 (citing *Baird*, 576 F.3d at 345-47; *Jacobs*, 215 F.3d at 773-74; *McDonald*, 966 F.2d at 294-95).

Moreover, "the cases in which the Seventh Circuit has found the display of a weapon to be unreasonable typically involved verbal threats or shocking use of the weapon."  *Id.* at 951.  In

---

[12] The Seventh Circuit has recognized that the excessive force standard is "well settled and, since it is already an objective standard based on a reasonable police officer, qualified immunity normally will not apply." *DuFour-Dowell*, 969 F. Supp. at 1120-21(citing *Lanigan*, 110 F.3d at 476-77).  "However, the Seventh Circuit has left open the possibility that the applicable law may be sufficiently unsettled to justify application of the defense in a particular case."  *Id.* (citing *Lanigan*, 110 F.3d at 477).

the instant case, the officers did not verbally threaten Howard or hold a gun to his head. *Id.*

Additionally, the officers were making an arrest, or at least an investigatory stop, and therefore,

were entitled to use some degree of force in carrying out their duties. *Id.*; *see Graham*, 490 U.S.

at 396; *Ingram v. Basile*, No. 05 C 853, 2006 WL 1431048, at *4 (N.D. Ill. May 19, 2006);

*Miller*, 381 F. Supp. 2d at 784.

Based on this record, the officers' use of their weapons was "neither patently violative of

[Howard's] Fourth Amendment right nor contrary to clearly established law," *Anderson*, 774 F.

Supp. 2d at 951, entitling the Defendants to the protection of qualified immunity as a matter of

law on Howard's claims of excessive force arising from the pointing of their guns. Summary

judgment on this particular claim must be granted accordingly.

### 2. *Taylor and Heath Are Not Entitled to Qualified Immunity on the Too-Tight Handcuffing Claim*

On the other hand, Howard does defeat Taylor and Heath's qualified immunity defense

with respect to his excessive force claim arising from their failure to adjust or loosen his

handcuffs as "it would have been sufficiently clear to a reasonable officer that he used excessive

force in the situation he confronted." *Payne*, 337 F.3d at 780. It was "well established that it

was unlawful to use excessively tight handcuffs and violently yank the arms of arrestees who

were not resisting arrest, did not disobey the orders of a police officer, did not pose a threat to

the safety of the officer or others, and were suspected of committing only minor crimes." *Id.*

(collecting cases); *see also Herzog*, 309 F.3d at 1043 (collecting cases and reciting that a refusal

to loosen a plaintiff's chafing handcuffs is an instance of excessive force).

Although, when Taylor discovered the gun, Howard did pose a threat to the officers, once

he was patted down for the second time, handcuffed, and placed in the squad car, he no longer

posed a threat to the officers. Moreover, based on Howard's version of the events, he did not resist arrest or disobey the officers' orders. Therefore, Taylor and Heath are not entitled to qualified immunity regarding Howard's § 1983 claim of excessive force arising from their failure to loosen or adjust the handcuffs after Howard's repeated and specific complaints of pain.

### 3. Ealing Is Not Entitled to Qualified Immunity on the "Throwing" Allegations

Unlike pointing his gun at Howard, Ealing is not entitled to qualified immunity on Howard's claims that Ealing threw (or shoved) him against the van and then onto the ground. At the time of Howard's arrest, "it was of course clearly established that a police officer may not use excessive force in arresting an individual." *Holmes*, 511 F.3d at 687; *see Norris*, 2006 WL 753131, at *14 ("[T]he Seventh Circuit [has] made clear that police officers do not have the right to inflict 'wholly gratuitous' force on a subdued suspect who was not resisting arrest." (citing *Clash*, 77 F.3d at 1048)). Accepting as true Howard's contentions that he did not offer any physical resistance and complied with the officers' orders, Ealing could not have reasonably thought that the allegedly gratuitous force he employed against Howard—once Howard was out of the van and away from the gun—was justified. *See Holmes*, 511 F.3d at 687; *Susanowiz v. Town of Hamilton*, No. 1:10-cv-26, 2011 WL 65777, at *6 (N.D. Ind. Jan. 10, 2011). That is, no reasonable officer could have thought that it was permissible to throw, or shove, an unresisting arrestee against a vehicle and then onto the ground when guns were pointed at him, he complied with the only verbal order apparently given (to put his hands on the steering wheel), and never resisted. *See Holmes*, 511 F.3d at 687 (citing *Payne*, 337 F.3d at 780); *Hayes*, 2009 WL 700232, at *4 ("It has long been well established that a police officer may not continue to use force against a suspect who is subdued and complying with the officer's orders.") (collecting cases).

Therefore, on this record, Ealing is not entitled to qualified immunity on Howard's claim

of being thrown against the van and onto the ground. *See White v. Gerardot*, No. 1:05-CV-382, 2007 WL 541819, at *7 (N.D. Ind. Feb. 15, 2007) ("[W]hen factual disputes surrounding the conduct at issue bear directly upon whether it was objectively reasonable for [the officer] to believe he acted in compliance with clearly established law, then summary judgment on the issue of qualified immunity must be denied." (internal quotation marks and citations omitted)). Accordingly, Defendant's motion for summary judgment on Howard's excessive force claim regarding these allegations of excessive force against Ealing will be denied.

### D. Howard's Battery Claim Against the City of Fort Wayne

Although neither party briefed this issue, Defendants explicitly moved for summary judgment on Howard's state law battery claim as well as his excessive force claim. (Defs.' Mem. 1.) As Howard clarifies in his response, his battery claim under Indiana law is advanced only against the City of Fort Wayne based on *respondeat superior* liability. (Pl.'s Resp. 2.)

"Under the doctrine of *respondeat superior*, an employer is liable for the acts of its employees which were committed within the course and scope of their employment." *City of Fort Wayne v. Moore*, 706 N.E.2d 604, 607 (Ind. App. 1999). However, as discussed earlier, there is a genuine issue of material fact concerning whether Taylor and Heath used excessive force when they failed to loosen Howard's handcuffs and whether Ealing used excessive force in throwing (or shoving) Howard against the van and on the ground. Therefore, the Indiana state law battery claim against the City under *respondeat superior* arising from these two actions survives summary judgment; however, the battery claim against the City for the officers pointing their guns at Howard fails as the Court concluded above that this did not amount to excessive force. *See Fitzpatrick v. City of Fort Wayne*, No. 1:07-CV-259-RBC, 2009 WL 735025, at *10 (N.D. Ind. Mar. 19, 2009).

Consequently, summary judgment on the state law battery claim against the City based on the too-tight handcuffing and "throwing" allegations is DENIED.

## VI. CONCLUSION

For the foregoing reasons, the Motion for Partial Summary Judgment (Docket # 41) is GRANTED IN PART AND DENIED IN PART. As explicated above, Howard will be permitted to go forward with only his excessive force claim against Taylor and Heath based on too-tight handcuffing, his excessive force claim against Ealing based on allegations of being thrown (or shoved) against a vehicle and onto the ground, and his battery claim against the City of Fort Wayne. On the other hand, summary judgment is GRANTED to the Defendants on Howard's excessive force claims against all the officers based on gun-pointing, against Ealing based on too-tight handcuffing, and against Taylor and Heath based on his allegations of being thrown against the van and onto the ground.

SO ORDERED.

Entered this 10th day of July, 2012.

/S/ Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge